UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

**CHAMBERS OF**
**CHARLES D. AUSTIN**
**UNITED STATES MAGISTRATE JUDGE**

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

July 24, 2025

LETTER TO ALL COUNSEL OF RECORD

Re:   *Mary G. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
      Civil No. 24-1473-CDA

Dear Counsel:

On May 21, 2024, Plaintiff Mary G. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for disabled widow's benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 11) and the parties' briefs (ECFs 12, 17). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

## I.  PROCEDURAL BACKGROUND

Plaintiff filed an application for disabled widow's benefits (Widow's Insurance Benefits) on August 27, 2021, alleging a disability onset of September 6, 2011.[2] Tr. 20, 65. Plaintiff's claims were denied initially and on reconsideration. Tr. 84-93. On January 19, 2023, an Administrative Law Judge ("ALJ") held a hearing. Tr. 37-64. Following the hearing, on February 1, 2023, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[3] during the relevant time frame. Tr. 17-31. The Appeals Council denied Plaintiff's request for review, Tr. 1-9, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.  THE ALJ'S DECISION

---

[1] Plaintiff filed this case against "Commissioner of Social Security" on May 21, 2024. ECF 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] Plaintiff amended her alleged onset date of disability to August 24, 2021. Tr. 20, 41-43.

[3] 42 U.S.C. §§ 301 et seq.

Mary G. v. Bisignano
Civil No. 24-1473-CDA
July 24, 2025
Page 2

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

At step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since September 6, 2011, the alleged onset date." Tr. 22. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "anxiety, panic disorder, depression, obsessive-compulsive disorder, and mood disorder." Tr. 23. The ALJ determined that Plaintiff did not suffer from any non-severe impairments. Tr. 23. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 23. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: would need to avoid work at unprotected heights or around dangerous machinery. Would be able to understand and carry out simple instructions, and routine, repetitive tasks. Would need to avoid work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the others). Would be able to perform work activities for up to 2 hours at a time but would then become distracted, causing the individual to be off task. However, time off task can be accommodated by normal breaks. Occasionally able to change activities or work settings during the workday without being disruptive. Occasionally able to deal with changes in a routine work setting. Able to have occasional interaction with supervisors. Able to have occasional, non-collaborative, interaction with coworkers. Able to have superficial or incidental interaction with the general public.

Tr. 26. The ALJ determined that Plaintiff had no past relevant work but could perform jobs that existed in significant numbers in the national economy. Tr. 29-30. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 31.

### III.   LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application

of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

IV.    **ANALYSIS**

Plaintiff raises two arguments on appeal: that "the ALJ failed to explain the use of certain terminology in the RFC and how the terminology could be conveyed in a work-related setting" and that there was "an inconsistency between the RFC and the vocational expert's opinion regarding time off task." ECF 12, at 12-22. Defendant counters that substantial evidence supports the ALJ's RFC finding and that the ALJ was not required to make a finding regarding time off-task. ECF 17, at 6-15.

A.  <u>Substantial evidence supports the ALJ's RFC assessment.</u>

Plaintiff asserts that the ALJ, despite finding the state agency consultants' opinions persuasive, failed to adequately incorporate the consultants' opined limitations that Plaintiff "would be able to manage basic work-related social interactions with supervisors, coworkers, and the public adequately" and that Plaintiff "would be able to respond appropriately to basic supervisory instruction and criticism" into the RFC. ECF 12, at 13-19. Specifically, Plaintiff argues that the ALJ failed to explain how the word "basic" related to social interactions or supervisory instruction and criticism. *Id.*, at 13. Instead, Plaintiff argues, the ALJ apparently defined the term "basic" in three ways, limiting Plaintiff to: "occasional interaction with supervisors"; "occasional, non-collaborative, interaction with coworkers" and "superficial or incidental interaction with the general public." *Id.*, at 13-14. Plaintiff avers that this constitutes reversible error because the ALJ failed to explain "why the same exact opinion regarding social interactions was applied differently to supervisors, coworkers and the general public." *Id.*, at 14.

The Court finds Plaintiff's arguments unavailing. "The RFC determination is an issue ultimately reserved for the ALJ." *Geraldine S. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-3447, 2019 WL 3935376, at *1 (D. Md. Aug. 20, 2019). An ALJ's RFC determination must be based "on all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3). Although the ALJ did not replicate the state agency consultants' opinions verbatim in crafting the RFC, such a discrepancy does not warrant remand. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a [source's] opinions verbatim; nor is the ALJ required to adopt the [source's] limitations wholesale."); *Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014) ("[N]o rule or regulation compels an ALJ to incorporate into an RFC every finding made by a

*Mary G. v. Bisignano*
Civil No. 24-1473-CDA
July 24, 2025
Page 4

medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight."). Here, the ALJ acknowledged that Plaintiff "stated that her illnesses, injuries, or conditions affect her ability to get along with others." Tr. 23. The ALJ observed, however, that Plaintiff "also reported that she spent time with her family, in person, every day" and that mental status examinations showed Plaintiff exhibiting cooperative attitude, normal mood, appropriate affect, and clear speech. Tr. 23-24. The ALJ therefore concluded that Plaintiff had moderate limitations in interacting with others. Tr. 23.

In assessing the objective medical evidence, the ALJ noted that Plaintiff "denied any worsening social interactions," and that Plaintiff's "behavior remained appropriate, her thought processes were clear, coherent and logical, both her attention span and her concentration were normal, her memory was intact, her impulse control was normal, and her insight and judgment were intact." Tr. 28. The ALJ found that, "[b]ased on the evidence as a whole," Plaintiff's mental symptoms from anxiety/panic disorder, depression, obsessive compulsive disorder, and mood disorder, support a reduction to, among other things, "occasional interaction with supervisors"; "occasional, non-collaborative, interaction with coworkers"; and "superficial or incidental interaction with the general public." Tr. 26, 29. The ALJ reasoned that these limitations "are consistent with the medical evidence cited in detail" and "supported by the evidence of record considered in its entirety." Tr. 29.

Plaintiff disagrees with how the ALJ considered the evidence related to Plaintiff's ability to interact with her supervisor, coworkers, and the public. But Plaintiff points to the exact evidence that the ALJ discussed in contemplating their narrative regarding her mental impairments. Whether I could or would have found differently than the ALJ is of no moment. This Court "does not reweigh evidence . . . in evaluating whether a decision is supported by substantial evidence; '[w]here conflicting evidence allows reasonable minds to differ,' [I] defer to the Commissioner's decision." *Fiske v. Astrue*, 476 F. App'x 526, 527 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)).

The Court finds that the RFC's restrictions limiting Plaintiff to "occasional interaction with supervisors"; "occasional, non-collaborative, interaction with coworkers"; and "superficial or incidental interaction with the general public" do not require further explanation and that the Court's review is not impeded. In a different context, this Court has found that the ALJ adequately explained a term used in a plaintiff's RFC where the ALJ explained the meaning of the term to the vocational expert ("VE"). *See Jackie W. v. Comm'r, Soc. Sec. Admin.*, No. DLB-18-3883, 2019 WL 5960642, at *4 (D. Md. Nov. 13, 2019) ("While the ALJ did not include the term 'assembly-line work' in her RFC, her inclusion of the term in the hypothetical provides enough clarity for this Court's review."); *cf. Geneva W. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-1812, 2019 WL 3254533, at *3 (D. Md. July 19, 2019) (remanding to allow the ALJ to clarify the terms "production rate pace or strict production quotas" in the "RFC assessment and hypothetical to the VE, in order to establish that the VE's testimony constitutes substantial evidence supporting the ALJ's conclusion").

Similarly, the ALJ here explained the term "occasional, non-collaborative interaction with coworkers" in their hypothetical to the VE by stating "by that I mean they could be in the same

general area as co-workers, but no tandem work, no teamwork, wouldn't have to necessarily interact with other employees at all." *See* Tr. 60. Moreover, the ALJ explained the term "superficial or incidental interaction with the public" in the ALJ's hypothetical to the VE by stating the term meant "no work-related duties that would involve interaction with the general public; might see somebody passing in the hallway or something like that, but other than that, no interaction with the public." *See id.* Because the ALJ explained the meaning of "occasional, non-collaborative interaction with coworkers" and "superficial or incidental interaction with the public" to the VE, the Court finds that the ALJ adequately explained these terms in Plaintiff's RFC.

Further, Plaintiff avers that "although the three occupations suggested by the VE incorporate a level 8 interactions with people, i.e., taking instructions, there is nothing in this ALJ's decision that incorporates the quality of the interaction with supervisors during the occasional interactions such that Plaintiff would be able to respond appropriately." ECF 12, at 18. Specifically, Plaintiff argues that the ALJ did not explain how the evidence, or the consultants' opinions that Plaintiff "would be able to respond appropriately to basic supervisory instruction and criticism," comports with the RFC's limitation to occasional interaction with supervisors or the three occupations identified by the VE. *Id.*

The Court finds Plaintiff's argument unavailing. A review of the DOT entry for the job of janitor reveals that this job has a "People" rating, of "8," "reflecting the lowest possible level of human interaction that exists in the labor force[.]" *Fletcher v. Colvin*, No. 1:15CV166, 2016 WL 915196, at *10 (M.D.N.C. Mar. 4, 2016). Moreover, the DOT entry rates the activity of "Taking Instructions – Helping" as "Not Significant" and reflects the tasks of "Talking" and "Hearing" as "Not Present - Activity or condition does not exist." Janitor, DOT 381.687-018, 1991 WL 673258 (4th ed. rev. 1991). Consequently, Plaintiff has not shown that remand for the ALJ to include greater social interaction limitations in the RFC would result in a different outcome in her case. *See Ridley G. v. Comm'r of Soc. Sec.*, No. 1:20CV773, 2021 WL 4307507, at *8, 13 (N.D.N.Y. Sept. 22, 2021) (deciding that RFC restriction to no interaction or tandem tasks with coworkers harmonizes with jobs with DOT level 8 interaction); *Scott C. v. Comm'r of Soc. Sec.*, No. 2:20CV109, 2021 WL 2682276, at *4-5 (D. Vt. June 30, 2021) ("'[L]evel 8 interaction [in the DOT] is compatible with an RFC limiting a claimant to only superficial contact with coworkers, supervisors, and the public.'" (quoting *Alie v. Berryhill*, 4:16CV1352, 2017 WL 2572287, at *16 (E.D. Mo. June 14, 2017))); *Eldridge v. Berryhill*, No. 16-5289, 2018 WL 1092025, at *2 (W.D. Ark. Feb. 28, 2018) (finding jobs categorized by DOT as involving level 8 interaction consistent with restrictions to "limited contact with the general public" and "incidental contact with co-workers"); *Shorey v. Astrue*, No. 1:11CV414, 2012 WL 3475790, at *6 (D. Me. July 13, 2012) (holding that "inclusion of a limitation to occasional, brief, and superficial contact with coworkers and supervisors in the [ALJ]'s hypothetical question would not have excluded" jobs with a DOT "People" rating of 8); *Flaherty v. Halter*, 182 F. Supp. 2d 824, 851 (D. Minn. 2001) (finding jobs with "not significant" levels of social interaction under the DOT compatible with ALJ's limitation to "brief superficial type of contact with co-workers and supervisors and members of the public").

Mary G. v. Bisignano
Civil No. 24-1473-CDA
July 24, 2025
Page 6

"[T]he ALJ need only identify a single job within the claimant's capacity that exists in significant numbers in the national economy" at step five. *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 384 (D.N.J. 2013). As such, and because Plaintiff offers no other bases for arguing that the ALJ erroneously identified the job of janitor at step five, the Court concludes that remand on the basis of any step-five error is unwarranted.[4] Moreover, even if the ALJ erred by failing to include additional social limitations in Plaintiff's RFC, any error would be harmless because the job of janitor that the ALJ concluded that Plaintiff could perform does not require significant social interactions. *See Wilson v. Saul*, No. 1:19CV1089, 2020 WL 6293132, at *4 (M.D.N.C. Oct. 27, 2020) ("[E]ven assuming the ALJ erred here by failing to include additional social limitations in the RFC . . . , any error would be harmless because the jobs the ALJ concluded that [the p]laintiff could perform do not require significant social interactions. In fact, the [DOT's] descriptions of the jobs identified by the VE list interaction with 'People' as being 'Not Significant.'").

> B. <u>The ALJ did not err by excluding from the RFC time off-task.</u>

Plaintiff argues that the ALJ's RFC accommodation to normal breaks is unsupported by the record because the VE testified that a hypothetical employer would not tolerate an employee's time off-task if it exceeded 10% of the workday, qualifying that the 10% time off-task tolerance would be in addition to normal breaks. ECF 12, at 20-22 (citing Tr. 61).

When a claimant possesses a mental impairment, an ALJ is required to make "'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in [20 C.F.R.] § 404.1520a(c)(3)." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1520a(e)(4)). One of these four areas, CPP, concerns "the abilities to focus attention on activities and stay on task age-appropriately." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). A "moderate" limitation in CPP means that a claimant's ability to sustain CPP "independently, appropriately, effectively, and on a sustained basis is fair." *Id.*

Specific to a limitation in the functional area of CPP, an ALJ must then expressly account for such limitation, or explain why no limitation exists, in the function-by-function analysis. *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). An ALJ may not account for a claimant's moderate CPP limitations by restricting the RFC to simple, routine tasks or unskilled work without explaining why such provisions adequately address the claimant's CPP limitations. *See Mascio*, 780 F.3d at 638; *Shinaberry*, 952 F.3d at 121–22. However, an ALJ may accommodate a claimant's moderate CPP limitations by assigning

---

[4] Because the Court concludes that the ALJ identified at least one suitable job at step five, the Court does not reach Plaintiff's arguments regarding alleged conflicts between the ALJ's RFC assessment and the ALJ's conclusions that Plaintiff could perform the jobs of kitchen helper and car cleaner, as any such conflicts would be harmless error. *See Leggett v. Comm'r, Soc. Sec. Admin.*, No. SAG-12-1405, 2013 WL 1352298, at *3 (D. Md. Apr. 2, 2013) (determining that an ALJ's potential step-five error regarding certain jobs was harmless because no such error existed as to at least one job identified by the vocational expert).

persuasive value to a medical opinion that "provide[s] substantial support for" the ALJ's CPP-related RFC provisions. *Sizemore v. Berryhill*, 878 F.3d 72, 81 (4th Cir. 2017). In other words, where an ALJ finds that a "plaintiff [i]s moderately limited in CPP, the ALJ must account for those limitations in the RFC or explain how plaintiff could maintain CPP while performing simple, routine tasks." *Everlena G. v. Kijakazi*, No. DLB-20-0784, 2021 WL 3912277, at *3 (D. Md. Sept. 1, 2021).

Here, at step three, the ALJ concluded that Plaintiff had a moderate CPP limitation. Tr. 24. The ALJ's RFC states that Plaintiff "[w]ould be able to understand and carry out simple instructions, and routine, repetitive tasks. Would need to avoid work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the others)." Tr. 26. The ALJ included a limitation that Plaintiff "[w]ould be able to perform work activities for up to 2 hours at a time but would then become distracted, causing the individual to be off task. However, time off task can be accommodated by normal breaks." Tr. 26.

As an initial matter, Plaintiff observes correctly that the RFC does not adequately accommodate her CPP limitation by accommodating time off-task with normal scheduled breaks. ECF 12, at 21. This Court has recognized that such a limitation alone is insufficient to account for moderate CPP limitations because normal breaks are customary even for workers *without* CPP limitations. *See Richardson v. Berryhill*, No. TJS-17-1523, 2018 WL 11474067, at *3 (D. Md. June 25, 2018) ("The ALJ's finding that [claimant] can perform work in two-hour increments with normal breaks does not adequately account for [his] ability to concentrate and stay on task."); *Ludlow v. Comm'r, Soc. Sec. Admin.*, No. SAG-15-3044, 2016 WL 4466790, at *2 (D. Md. Aug. 23, 2016) (noting that an ALJ's "restriction to working in 2-hour intervals does not adequately account for a moderate limitation in the ability to stay on task, absent further explanation," and "does not account for any breaks in addition to those encompassed by a normal workday"); *see id.* (citing Social Security Ruling 96-9p, 1996 WL 374185 (July 2, 1996) for the proposition that "a normal workday includes a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals").

Had this provision been the only limitation in the RFC accounting for Plaintiff's CPP difficulties, Plaintiff's argument may have been persuasive. But that is not the case. While the RFC did not adequately account for Plaintiff's moderate CPP difficulties by accommodating for time off task with normal scheduled breaks, the RFC *did* account for Plaintiff's CPP issues by precluding her from performing "work requiring a high-quota production-rate pace."[5] Tr. 26. This Court has previously held that this restriction adequately accounts for a claimant's moderate CPP limitation. *See Teresa B. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-2280, 2019 WL 2503502, at *2 (D. Md. June 17, 2019) (holding that an RFC provision limiting a claimant to "no work requiring a high-quota production-rate pace (i.e., rapid assembly line work where coworkers are side-by-side and the work of one affects the work of the other)" was sufficient to address a moderate CPP limitation). Moreover, Plaintiff fails to identify any evidence that the ALJ failed to

---

[5] Plaintiff does not challenge the RFC's "production-rate pace" limitation on appeal.

review.  Certainly, Plaintiff disagrees with how the ALJ considered the evidence related to her mental limitations.  For a second time, the Court rejects the argument to reweigh evidence.

As a final note, an ALJ does not err by failing to include the VE's testimony regarding off-task time.  As explained above, the ALJ adequately accommodated for Plaintiff's CPP and social limitations in the RFC.  Even though the ALJ contemplated Plaintiff's time off-task "[i]t is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."  *David R. v. Comm'r of Soc. Sec.*, No. 22-0088, 2022 WL 17362156, at *7 (S.D. Ohio Nov. 30, 2022) (quoting *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421-22 (6th Cir. 2014)); *see Michael O. v. Kijakazi*, No. BAH-22-2287, 2023 WL 4533318, at *7 (D. Md. July 13, 2023) (holding that an ALJ does not err when excluding off-task percentage contemplated by a VE).  As such, the ALJ did not err by failing to incorporate the VE's testimony regarding off-task time into the RFC.

## V.     CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED.  The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion.  A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge